UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JONATHAN G. RODRIGUEZ,

                Plaintiff,

       v.

CITY OF NEW YORK and
POLICE OFFICER THOMAS
SULLIVAN (Shield No. 21919),

              Defendants.

---

Case No. 11-CIV-8660 (WHP)

ECF CASE

**COMPLAINT**

**JURY TRIAL DEMANDED**

       COMES NOW THE PLAINTIFF, Jonathan G. Rodriguez, by his attorney, Steven M. Warshawsky, for his complaint against the defendants and alleging as follows:

## NATURE OF THE CASE

       1.     This is a civil rights action under 42 U.S.C. § 1983 and New York state law arising from the plaintiff's false arrest and false imprisonment by Police Officer Thomas Sullivan on May 14, 2011. Officer Sullivan is an employee of the New York City Police Department. On the date in question, Officer Sullivan and several other police officers responded to a 9-1-1 call made by the plaintiff concerning a disagreement that the plaintiff was having with the manager of the Hudson River Café over a credit card charge. When it appeared to the plaintiff that Officer Sullivan was siding unfairly with the manager, the plaintiff attempted to record his interactions with Officer Sullivan on his cell phone. This angered Officer Sullivan, who tried to grab the cell phone out of the plaintiff's hands and then arrested the plaintiff on trumped-up charges of disorderly conduct and resisting arrest. There was no probable cause or other legal justification for the plaintiff's arrest. Officer Sullivan intentionally and maliciously

abused his power as a police officer.  As a result of Officer Sullivan's unlawful actions, the plaintiff was deprived of his rights and liberties for nearly three days.  Officer Sullivan also subjected the plaintiff to excessive force during the plaintiff's confinement at the precinct.  Officer Sullivan's actions violated the First Amendment and Fourth Amendment of the U.S. Constitution (as made applicable to the states through the Fourteenth Amendment) and New York state law.  The plaintiff is entitled to compensatory damages for injuries he suffered as a result of Officer Sullivan's unlawful actions, punitive damages to punish and deter Officer Sullivan from engaging in similar unlawful actions in the future, and statutory attorney's fees and costs.

## PARTIES

2.      Plaintiff **Jonathan G. Rodriguez** is a citizen of New York, and resides in Yonkers, New York.  At the time of the events in this case, Mr. Rodriguez was 24 years old.  Mr. Rodriguez is married.  He is employed by the Screen Actors Guild (actor) and by Yankee Stadium (seasonal restaurant staff).

3.      Defendant **City of New York** is a municipality of the State of New York.  The Corporation Counsel of NYC is Michael A. Cardozo.  The main office of the Corporation Counsel is located at 100 Church Street, New York, New York, 10007.  The NYPD is an agency or instrumentality of the City of New York.  The City of New York is being sued in its municipal capacity under 42 U.S.C. § 1983, pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), and its progeny, and under New York state law, pursuant to the doctrine of respondeat superior.

4.      Defendant Police Officer **Thomas Sullivan** (Shield No. 21919) is an employee of the New York City Police Department.  Upon information and belief, his place of

business is the NYPD 30th Precinct located at 451 West 151st Street, New York, New York, 10031; (212) 690-8811.  Officer Sullivan personally participated in the plaintiff's unlawful arrest and imprisonment on May 14, 2011.  At all relevant times, Officer Sullivan was acting under color of state law and in the scope of his employment with the NYPD.  Officer Sullivan is being sued in his individual capacity under 42 U.S.C. § 1983 and New York state law.

## JURISDICTION AND VENUE

5.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because this action arises under the Constitution and civil rights laws of the United States.

6.    This Court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because the plaintiff's federal and state law claims derive from a common nucleus of operative facts and form part of the same case or controversy under Article III of the U.S. Constitution.

7.    This Court has venue over this action pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to this action occurred in this district.

8.    There are no administrative exhaustion requirements for bringing the present civil rights action under 42 U.S.C. § 1983.

9.    The plaintiff served a valid notice of claim on the New York City Comptroller's Office on or about June 22, 2011, within 90 days of the incident.  The plaintiff's 50-h hearing was conducted on September 12, 2011.  To date, the city has neglected or refused to settle this matter administratively.  This action is being brought more than 30 days after the notice of claim was served on the city and within one year and 90 days after the incident.

## FACTUAL ALLEGATIONS

10.     The events in this case took place in the early morning hours of Saturday, May 14, 2011 (late Friday night).  Around 1:30 a.m., Mr. Rodriguez went to the Hudson River Café with a group of friends from Yankee Stadium to celebrate his co-worker's birthday.  The Hudson River Café is located on 133rd Street near 12th Avenue in Manhattan.  At no time during the events in this case was Mr. Rodriguez intoxicated.

11.     Upon arriving at the restaurant, Mr. Rodriguez went to the bar to buy a bottle of vodka for the co-worker.  He handed the bartender his debit card to use for the purchase.  Instead of completing the sale and giving Mr. Rodriguez the bottle, the bartender hesitated and walked back and forth a few times between the bar and the kitchen.  This concerned Mr. Rodriguez, who asked the bartender if there was a problem.  The bartender said that he needed the manager to process the transaction because it was a $300 bottle.  Mr. Rodriguez agreed to wait, but asked for his debit card back.  The bartender refused.  This annoyed Mr. Rodriguez, who told the bartender that he no longer wanted to buy the bottle and was going to leave the restaurant.

12.     Mr. Rodriguez did not take possession of the vodka bottle, which remained on the bar counter, sealed.

13.     Mr. Rodriguez then told his friends that he was going to leave the restaurant.  When Mr. Rodriguez turned back to the bar, the manager (whose name is not known at this time) had swiped his debit card for the vodka bottle.  The manager gave Mr. Rodriguez a receipt for $270 ($225 for the bottle plus a $45 service charge).  The receipt was time-stamp at 1:47 a.m.  Mr. Rodriguez immediately told the manager that he already had told the bartender that he did not want the bottle, and he asked the manager for another receipt showing that the

purchase had been voided.  At first, the manager encouraged Mr. Rodriguez to "just keep the bottle."  Mr. Rodriguez declined and insisted that the manager give him something in writing showing that the purchase had been voided.  The manager then told Mr. Rodriguez that he had reversed the charge, but refused to give him proof in writing.  This worried Mr. Rodriguez, who feared that the manager was trying to cheat him.

14.    Mr. Rodriguez' fears were heightened when the manager directed Mr. Rodriguez to follow him to the kitchen and then angrily berated him away from his friends.  The manager told Mr. Rodriguez that it was his club and that Mr. Rodriguez had to do whatever he said.  Mr. Rodriguez responded that it was his money and told the manager, "Who are you to tell me what to do?"  At that point, the manager called the bouncer to escort Mr. Rodriguez out of the restaurant.  Mr. Rodriguez told him there was no need for that, as he was leaving on his own.

15.    At no time during his conversation with the manager did Mr. Rodriguez yell, use profanity, or act in an aggressive or hostile manner.  At no time did Mr. Rodriguez disturb the peace or engage in disorderly conduct.

16.    Mr. Rodriguez then exited the restaurant.  Outside, Mr. Rodriguez again asked the manager for a receipt showing that the purchase had been voided.  The manager yelled at him to leave, and then the bouncer (whose name is not known at this time) used his body to push Mr. Rodriguez away from the entrance.  At this time, Mr. Rodriguez was standing just off the curb in front of a car parked on 133rd Street.  The street was quiet, with very little traffic.  Mr. Rodriguez kept asking the manager for a receipt.  When the bouncer started acting in a more threatening manner, Mr. Rodriguez called 9-1-1 and asked for police assistance.

17.    Officer Sullivan and several other police officers (whose names are not known at this time) arrived on the scene around 2:00 a.m.  Officer Sullivan first spoke with the

bouncer, who was standing in the middle of the street.  He then spoke with Mr. Rodriguez, who explained to Officer Sullivan what had happened inside the bar and told him that all he wanted was a receipt from the manager showing that the purchase of the vodka bottle had been voided. Officer Sullivan then spoke with the manager.

18.     After speaking with the manager, Officer Sullivan returned to Mr. Rodriguez and told him that the manager claimed that Mr. Rodriguez drank the entire bottle of vodka.  This confirmed Mr. Rodriguez' fears that the manager was cheating him.  Mr. Rodriguez told Officer Sullivan that this was not true and showed him the original receipt with the time stamp of 1:47 a.m.  Mr. Rodriguez pointed out to Officer Sullivan that it was ridiculous for the manager to claim that he had drunk the entire bottle of vodka in 13 minutes.  Officer Sullivan would not listen to Mr. Rodriguez' explanation, and told Mr. Rodriguez that if he had a dispute about the charge, he should take it up with his credit card company.  Mr. Rodriguez said that he was not leaving until he received proof that the purchase had been voided.  Officer Sullivan then told Mr. Rodriguez, "You have to leave the premises.  You can't be here."

19.     At no time during his conversation with Officer Sullivan did Mr. Rodriguez yell, use profanity, or act in an aggressive or hostile manner.  At no time did Mr. Rodriguez disturb the peace or engage in disorderly conduct.

20.     Believing that his rights were being violated, Mr. Rodriguez took out his cell phone and tried to record Officer Sullivan's actions, including his name plate and badge number.  This angered Officer Sullivan, who tried to grab the cell phone out of Mr. Rodriguez' hands.  Mr. Rodriguez stepped back to prevent the officer from taking the cell phone.  Officer Sullivan then moved menacingly towards Mr. Rodriguez, who continued backing away from him.  There was no traffic in the street at the time.  Officer Sullivan and several other officers

quickly surrounded Mr. Rodriguez next to a parked car.  Mr. Rodriguez, fearing for his safety, put the cell phone down on top of the car and stood still.  Officer Sullivan confiscated the cell phone.  Mr. Rodriguez then was handcuffed behind his back by a female police officer and placed into a patrol car.  The time was shortly after 2:00 a.m.

21.    Mr. Rodriguez was not able to record any of the police officers' actions on his cell phone.

22.    The entire incident from the time Mr. Rodriguez took out his cell phone to the time he was handcuffed lasted no more than 30-60 seconds.  At no time during this incident did Officer Sullivan or another police officer tell him that he was under arrest.  At no time during this incident did Mr. Rodriguez run from or turn his back on the police officers.  At no time during this incident did Mr. Rodriguez interfere with any moving vehicles in the street.

23.    Mr. Rodriguez was not told why he was being arrested.

24.    Mr. Rodriguez was not read his Miranda Rights.

25.    There was no probable cause or other legal justification for his arrest.

26.    Mr. Rodriguez was arrested because he tried to record his interactions with Officer Sullivan on his cell phone. Officer Sullivan intentionally and maliciously abused his power as a police officer in arresting Mr. Rodriguez.

27.    Mr. Rodriguez was taken by patrol car to the local police precinct (upon information and belief, the 30th Precinct).  The ride lasted about five minutes.  During the ride, Officer Sullivan (sitting in the front passenger seat) referred to Mr. Rodriguez as a "wiseass" and told him "none of this would have happened if you left when I told you to."

28.    At the precinct, Mr. Rodriguez was placed in a holding cell while still being handcuffed behind his back.  Officer Sullivan then attached another set of handcuffs to the

ones already on Mr. Rodriguez and used them to chain Mr. Rodriguez to the bench inside the cell.  This was unnecessary, unreasonable, and excessive force, motivated solely to punish and humiliate Mr. Rodriguez.  Officer Sullivan intentionally and maliciously abused his power as a police officer in chaining Mr. Rodriguez to the bench inside the cell.

29.    Mr. Rodriguez remained handcuffed inside the cell for about three hours. During this time, both of his wrists were painful, swollen, and bruised, and his right wrist became numb.  Several times, Mr. Rodriguez asked Officer Sullivan to remove or loosen the handcuffs.  Officer Sullivan refused, calling Mr. Rodriguez a "wiseass" and telling him, "The more you talk, the worse it's going to be for you."

30.    While inside the cell, Mr. Rodriguez asked for water several times. Officer Sullivan refused to give him any water.  Mr. Rodriguez had to drink water from another person inside the cell.

31.    The cell recently had been painted and Mr. Rodriguez' shirt was stained with wet paint.

32.    Because of the pain and numbness in his wrists, Mr. Rodriguez asked to be taken to the hospital.  At first, Officer Sullivan told him that if he went to the hospital, it would delay his processing.  Mr. Rodriguez insisted.  Eventually an FDNY ambulance was called and transported Mr. Rodriguez to Harlem Hospital Center, where he was treated for wrist injuries and wheezing due to asthma.  Mr. Rodriguez then was transported back to the precinct, where he remained for one to two hours before being taken to Central Booking in downtown Manhattan.

33.    Mr. Rodriguez remained imprisoned at Central Booking, in a crowded group cell, until his arraignment on Monday, May 16, 2011, around 5:30 p.m.  This was a revolting, humiliating, and frightening experience.  He was released on his own recognizance.

34.    In total, Mr. Rodriguez was in NYPD custody for approximately 63 hours.

35.    Mr. Rodriguez was charged with resisting arrest (P.L. 205.30) and disorderly conduct/obstructing vehicular traffic (P.L. 240.20(5)).  These charges were false.  Mr. Rodriguez did not intentionally prevent or attempt to prevent a police officer from effecting an authorized arrest of himself.  He did not intentionally or recklessly cause public inconvenience, annoyance, or alarm by obstructing vehicular traffic.   Officer Sullivan intentionally and maliciously abused his power as a police officer in charging Mr. Rodriguez with these crimes.

36.    The charges against Mr. Rodriguez were dismissed and expunged pursuant to an adjournment in contemplation of dismissal (ACD) entered in Manhattan Criminal Court on June 22, 2011.

## COUNT ONE:  FALSE ARREST/FALSE IMPRISONMENT
### (Section 1983; Officer Sullivan)

37.    Plaintiff repeats and re-alleges Paragraphs 1-36 above.

38.    The elements of a claim for false arrest/false imprisonment under Section 1983 are substantially the same as under New York law.  These elements are:  (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement: and (4) the confinement was not otherwise privileged.

39.    Officer Sullivan intended to, and did, confine Mr. Rodriguez.

40.    Mr. Rodriguez was conscious of the confinement.

41.     Mr. Rodriguez did not consent to the confinement.

42.     The confinement was not otherwise privileged.

43.     There was no probable cause for Mr. Rodriguez' arrest and imprisonment by Officer Sullivan.

44.     There was no arguable probable cause for Mr. Rodriguez' arrest and imprisonment by Officer Sullivan.

45.     There was no other legal justification for Mr. Rodriguez' arrest and imprisonment by Officer Sullivan.

46.     Officer Sullivan is not entitled to qualified immunity for falsely arresting and imprisoning Mr. Rodriguez.

47.     Officer Sullivan's actions violated Mr. Rodriguez' clearly established rights under the Fourth Amendment.

48.     It was not objectively reasonable for Officer Sullivan to believe that his actions did not violate Mr. Rodriguez' rights under the Fourth Amendment.

49.     Officer Sullivan acted with intentional, knowing, callous, and/or reckless indifference to Mr. Rodriguez' rights when he arrested and imprisoned Mr. Rodriguez.

50.     As a result of Officer Sullivan's unconstitutional conduct, Mr. Rodriguez suffered loss of liberty, insult and embarrassment, loss of trust, emotional pain and suffering, physical pain and suffering, lost wages, and other compensable injuries, for which he is entitled to an award of compensatory damages.

51.     Mr. Rodriguez is entitled to an award of punitive damages to punish Officer Sullivan for his unconstitutional conduct and to deter him from engaging in similar unconstitutional conduct in the future.

## COUNT TWO:  EXCESSIVE FORCE
### (Section 1983; Officer Sullivan)

52.  Plaintiff repeats and re-alleges Paragraphs 1-51 above.

53.  Plaintiff's federal law excessive force claim arises under the Fourth Amendment because the excessive force was used before the plaintiff's arraignment.

54.  Officer Sullivan used excessive force against Mr. Rodriguez in violation of the Fourth Amendment when he placed Mr. Rodriguez into a holding cell at the precinct while Mr. Rodriguez still was handcuffed behind his back and then attached another set of handcuffs to the ones already on Mr. Rodriguez and used them to chain Mr. Rodriguez to the bench inside the cell.  Mr. Rodriguez remained handcuffed in this manner for about three hours.  During this time, both of his wrists were painful, swollen, and bruised, and his right wrist became numb.  Several times, Mr. Rodriguez asked Officer Sullivan to remove or loosen the handcuffs, and Officer Sullivan refused.

55.  There was no legal justification for Officer Sullivan's actions.

56.  Officer Sullivan's actions were objectively unreasonable.

57.  Mr. Rodriguez suffered more than de minimis injuries caused by Officer Sullivan's excessive force.

58.  Officer Sullivan is not entitled to qualified immunity for subjecting Mr. Rodriguez to excessive force.

59.  Officer Sullivan's actions violated Mr. Rodriguez' clearly established rights under the Fourth Amendment.

60.  It was not objectively reasonable for Officer Sullivan to believe that his actions did not violate Mr. Rodriguez' rights under the Fourth Amendment.

-11-

61.     Officer Sullivan acted with intentional, knowing, callous, and/or reckless indifference to Mr. Rodriguez' rights when he used excessive force against Mr. Rodriguez.

62.     As a result of Officer Sullivan's unconstitutional conduct, Mr. Rodriguez suffered loss of liberty, insult and embarrassment, loss of trust, emotional pain and suffering, physical pain and suffering, lost wages, and other compensable injuries, for which he is entitled to an award of compensatory damages.

63.     Mr. Rodriguez is entitled to an award of punitive damages to punish Officer Sullivan for his unconstitutional conduct and to deter him from engaging in similar unconstitutional conduct in the future.

## COUNT THREE:  VIOLATION OF FIRST AMENDMENT
### (Section 1983; Officer Sullivan)

64.     Plaintiff repeats and re-alleges Paragraphs 1-63 above.

65.     The First Amendment protects the right of citizens to make video and audio recordings of police officers with whom they are interacting in a public space during the police officers' performance of their official duties.

66.     Officer Sullivan violated Mr. Rodriguez' rights under the First Amendment when Mr. Rodriguez attempted to record his interactions with Officer Sullivan on his cell phone and, in retaliation, Officer Sullivan tried to grab the cell phone out of Mr. Rodriguez' hands, moved towards Mr. Rodriguez in a threatening manner, confiscated his cell phone, and then arrested him on trumped-up charges of disorderly conduct and resisting arrest.

67.     Officer Sullivan's actions were motivated by Mr. Rodriguez' exercise of his First Amendment right to record a police officer with whom he was interacting in a public space during the police officer's performance of his official duties.

68.    Officer Sullivan's actions interfered with and chilled Mr. Rodriguez' exercise of his First Amendment rights.

69.    Officer Sullivan is not entitled to qualified immunity for violating Mr. Rodriguez' rights under the First Amendment.

70.    Officer Sullivan's actions violated Mr. Rodriguez' clearly established rights under the First Amendment.

71.    It was not objectively reasonable for Officer Sullivan to believe that his actions did not violate Mr. Rodriguez' rights under the First Amendment.

72.    Officer Sullivan acted with intentional, knowing, callous, and/or reckless indifference to Mr. Rodriguez' rights under the First Amendment.

73.    As a result of Officer Sullivan's unconstitutional conduct, Mr. Rodriguez suffered loss of liberty, insult and embarrassment, loss of trust, emotional pain and suffering, physical pain and suffering, lost wages, and other compensable injuries, for which he is entitled to an award of compensatory damages.

74.    Mr. Rodriguez is entitled to an award of punitive damages to punish Officer Sullivan for his unconstitutional conduct and to deter him from engaging in similar unconstitutional conduct in the future.

## COUNT FOUR:  MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983
### (Section 1983; City of New York)

75.    Plaintiff repeats and re-alleges Paragraphs 1-74 above.

76.    Upon information and belief, Officer Sullivan's unconstitutional actions alleged herein (false arrest/false imprisonment, excessive force, violation of the First

Amendment) were ordered and/or conducted pursuant to an officially promulgated policy sanctioned or ordered by the New York City Police Department and the City of New York.

77.     Upon information and belief, Officer Sullivan's unconstitutional actions alleged herein (false arrest/false imprisonment, excessive force, violation of the First Amendment) were ordered and/or conducted pursuant to a pervasive custom or practice of the New York City Police Department that has been approved by the City of New York and/or that the City of New York is or should be aware of.

78.     Upon information and belief, Officer Sullivan's unconstitutional actions alleged herein (false arrest/false imprisonment, excessive force, violation of the First Amendment) were authorized by one or more high-ranking NYPD officials who have final policymaking authority in this area.

79.     Upon information and belief, the City of New York was deliberately indifferent to the plaintiff's constitutional rights by failing to train and supervise Officer Sullivan in the proper and lawful performance of his duties as a police officer.

80.     As a result of the City of New York's culpable conduct in connection with Officer Sullivan's unconstitutional actions alleged herein (false arrest/false imprisonment, excessive force, violation of the First Amendment), Mr. Rodriguez suffered loss of liberty, insult and embarrassment, loss of trust, emotional pain and suffering, physical pain and suffering, lost wages, and other compensable injuries, for which he is entitled to an award of compensatory damages.

## COUNT FIVE:  FALSE ARREST/FALSE IMPRISONMENT
### (New York law; Officer Sullivan, City of New York)

81.     Plaintiff repeats and re-alleges Paragraphs 1-80 above.

82.     The elements of a claim for false arrest/false imprisonment under New York law are:  (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement: and (4) the confinement was not otherwise privileged.

83.     Officer Sullivan intended to, and did, confine Mr. Rodriguez.

84.     Mr. Rodriguez was conscious of the confinement.

85.     Mr. Rodriguez did not consent to the confinement.

86.     The confinement was not otherwise privileged.

87.     There was no probable cause for Mr. Rodriguez' arrest and imprisonment by Officer Sullivan.

88.     There was no arguable probable cause for Mr. Rodriguez' arrest and imprisonment by Officer Sullivan.

89.     There was no other legal justification for Mr. Rodriguez' arrest and imprisonment by Officer Sullivan.

90.     Officer Sullivan is not entitled to qualified immunity for falsely arresting and imprisoning Mr. Rodriguez.

91.     Officer Sullivan's actions were taken without a reasonable basis.

92.     Officer Sullivan's actions were taken in bad faith.

93.     Officer Sullivan's actions were intentional, wanton, and malicious.

94.     As a result of Officer Sullivan's unlawful conduct, Mr. Rodriguez suffered loss of liberty, insult and embarrassment, loss of trust, emotional pain and suffering, physical pain and suffering, lost wages, and other compensable injuries, for which he is entitled to an award of compensatory damages.

95.    Mr. Rodriguez is entitled to an award of punitive damages to punish Officer Sullivan for his unlawful conduct and to deter him from engaging in similar unconstitutional conduct in the future.

96.    Because Officer Sullivan's actions were taken in the scope of his employment with the NYPD, the City of New York is vicariously liable for the harm caused by Officer Sullivan's tortious conduct.

## COUNT SIX:  BATTERY
### (New York law; Officer Sullivan, City of New York)

97.    Plaintiff repeats and re-alleges Paragraphs 1-96 above.

98.    The elements of a battery claim under New York law are an intentional wrongful contact with another person without consent.

99.    Officer Sullivan intentionally and wrongfully contacted Mr. Rodriguez without Mr. Rodriguez' consent when he placed Mr. Rodriguez into a holding cell at the precinct while Mr. Rodriguez still was handcuffed behind his back and then attached another set of handcuffs to the ones already on Mr. Rodriguez and used them to chain Mr. Rodriguez to the bench inside the cell.  Mr. Rodriguez remained handcuffed in this manner for about three hours. During this time, both of his wrists were painful, swollen, and bruised, and his right wrist became numb.  Several times, Mr. Rodriguez asked Officer Sullivan to remove or loosen the handcuffs, and Officer Sullivan refused.

100.    There was no legal justification for Officer Sullivan's actions.

101.    Mr. Rodriguez suffered more than de minimis injuries caused by Officer Sullivan's battery.

102.    Officer Sullivan is not entitled to qualified immunity for subjecting Mr. Rodriguez to a battery.

103.    Officer Sullivan's actions were taken without a reasonable basis.

104.    Officer Sullivan's actions were taken in bad faith.

105.    Officer Sullivan's actions were intentional, wanton, and malicious.

106.    As a result of Officer Sullivan's unlawful conduct, Mr. Rodriguez suffered loss of liberty, insult and embarrassment, loss of trust, emotional pain and suffering, physical pain and suffering, lost wages, and other compensable injuries, for which he is entitled to an award of compensatory damages.

107.    Mr. Rodriguez is entitled to an award of punitive damages to punish Officer Sullivan for his unlawful conduct and to deter him from engaging in similar unlawful conduct in the future.

108.    Because Officer Sullivan's actions were taken in the scope of his employment with the NYPD, the City of New York is vicariously liable for the harm caused by Officer Sullivan's tortious conduct.

## **PRAYER FOR RELIEF**

WHEREFORE the Plaintiff demands judgment against the Defendants for:

A.      Compensatory damages in an amount no less than $500,000;

B.      Punitive damages in an amount no less than $500,000;

C.      Pre-judgment interest;

D.      Post-judgment interest;

E.      Attorney's fees, costs, and disbursements; and

F.      All other relief that the Plaintiff may be entitled to under law, or as

justice may require.


Dated:  November 29, 2011
        New York, New York

                          Respectfully submitted,

                          *Steven M. Warshawsky*

        By:     _____
                STEVEN M. WARSHAWSKY (SW 5431)
                Empire State Building
                350 Fifth Avenue, 59th Floor
                New York, NY  10118
                Tel:  (212) 601-1980
                Fax:  (212) 601-2610
                Email:  smw@warshawskylawfirm.com
                Website:  www.warshawskylawfirm.com